IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

    v.                                                                No. 17-cr-182 MCA

JUAN CARLOS VILLALOBOS-MACIAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's *Motion to Dismiss Count One of the Indictment for Improper Venue* [Doc. 16]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **DENIES** Defendant's *Motion*.

I. Background

Defendant was charged in a four-count *Indictment* with carjacking (Count 1) and attempted carjacking (count 2), in violation of 18 U.S.C. § 2119, and with using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 3 and 4). [Doc. 2] Counts 1 and 3 allege conduct that occurred in Pueblo County, Colorado, and Counts 2 and 4 allege conduct that occurred in Mora County, New Mexico. [Doc. 2]

The Government that Defendant engaged in the following conduct. On December 28, 2016, Defendant approached P.J. at the Pinon Rest Stop, which is at mile marker 112

off of southbound Interstate 25 outside of Pueblo, Colorado. [Doc. 16; Doc. 20] Defendant pointed a revolver at P.J., then fired the weapon. [Doc. 16; Doc. 20] Either with the shot or by using the gun as a club, Defendant shattered the driver's side window. [Doc. 16; Doc. 20] As P.J. fled, she threw her purse near the back of the vehicle. [Doc. 16; Doc. 20] Defendant picked up the purse and drove P.J.'s vehicle out of the parking lot and south on Interstate 25. [Doc. 16; Doc. 20]

The Government further alleges that sometime later[1] and while still in possession of P.J.'s vehicle, Defendant used the same revolver to attempt to carjack a second vehicle on Interstate 25 near Wagon Mound, New Mexico. [Doc. 20; Doc. 2 (Count 2)] During this encounter, Defendant fired the revolver and injured J.K. in the hand. [Doc. 20] He then drove away in P.J.'s car. [Doc. 20] He was intercepted and arrested on Interstate 25 after a brief chase. [Doc. 20; Doc. 16 (stating that Defendant was arrested "approximately three hours" after the incident in Colorado)]

The carjacking statute (§ 2119) provides that:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--

**(1)** be fined under this title or imprisoned not more than 15 years, or both,

**(2)** if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

---

[1] Defendant states that the incident in Colorado occurred at "approximately 5:00 a.m." and that police were contacted about the New Mexico incident at "approximately 7:55 a.m." [Doc. 16, pg. 6]

**(3)** if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (footnote omitted). Count 1 of the *Indictment* charges Defendant with carjacking as follows:

> On or about December 28, 2016, in Pueblo County, in the District of Colorado, and elsewhere, the defendant, JUAN CARLOS VILLALOBOS-MACIAS, with the intent to cause death and serious bodily harm, did take a motor vehicle, a white Toyota RAV4, bearing Colorado license plate number 113VGK, that had been shipped, transported, and received in interstate commerce, from the person and presence of another, by force, violence, and intimidation, resulting in serious bodily injury, a bullet wound to the hand that caused extreme physical pain and impairment of the function of a bodily member to J.K.
>
> In violation of 18 U.S.C. § 2119.

[Doc. 2] Thus, Count 1 of the *Indictment* charges Defendant with violation of § 2119(2) by taking a vehicle by force from P.J. which resulted in bodily injury to J.K.

Defendant now moves to dismiss Count 1 of the *Indictment* on the ground that New Mexico is not the proper venue for this charge. [Doc. 16]

## II. Discussion

### A. Law on Venue

The right to be tried in the place where the crime was committed is protected in multiple ways. "The Constitution twice safeguards the defendant's venue right: Article III, § 2, cl. 3, instructs that 'Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed' [and] the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.'" *United States v. Cabrales*, 524 U.S. 1, 6 (1998). In addition, "Rule 18 of the Federal

Rules of Criminal Procedure, providing that 'prosecution shall be had in a district in which the offense was committed,' echoes the constitutional commands." *Id*.; *see also* Fed. R. Crim. P. 12(b)(3)(a)(1) (providing for pre-trial motions based on "improper venue"). Congress addressed venue for crimes that are committed in more than one district in 18 U.S.C. § 3237(a), which provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

When a criminal statute does not specify the proper venue, "'the place at which the crime was committed 'must be determined from the *nature of the crime alleged and the location of the act or acts constituting it.*'" *United States v. Cryar*, 232 F.3d 1318, 1321 (10th Cir. 2000) (quoting *United States v. Medina–Ramos,* 834 F.2d 874, 876 (10th Cir. 1987); *see United States v. Rodriguez–Moreno,* 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."). In doing so, the courts "often examine the verbs used in [the] . . . statute in order to define the offense." *Cryar*, 232 F.3d at 1231. "But, as the Supreme Court has made clear, the verb test is merely an interpretive device, and is not to be given primacy

over other interpretive methods." *Id*.; *see Rodriguez–Moreno,* 526 U.S. at 279–80. Moreover, "[v]enue is proper under § 3237 when an 'essential *conduct* element' of the offense continues into the charging district." *United States v. Sullivan*, 797 F.3d 623, 631 (9th Cir. 2015), *cert. denied,* 136 S. Ct. 2408 (2016) (emphasis added) (quoting *Rodriguez-Moreno*, 526 U.S. at 280).

In considering a motion to dismiss for lack of venue, the Court's review is limited to the face of the indictment. "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). "Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency." *Id*.; *see United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (stating that the district court erred by considering "evidence that should only have been presented at trial"); *United States v. Forrest*, 182 F.3d 910 (4th Cir. 1999) (unpublished) (stating that "[w]hen the motion to dismiss for improper venue is a pretrial motion, only the indictment may be considered. Evidence beyond the face of the indictment should not be considered.").

**B. Analysis**

**1. Adequacy of the indictment**

At trial, "[t]he burden is on the government to prove that the crime was committed in the district in which the prosecution is brought ... and when a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1188 (2d Cir. 1989) (citations omitted), *cert. denied,* 493 U.S. 933 (1989); *United States v. Naranjo,* 14 F.3d 145, 146 (2d Cir. 1994)

("The Government bears the burden of proving, by a preponderance of the evidence, that venue exists."). Before trial, however, "it suffices for the government to allege with specificity that the charged acts support venue in th[e] district." *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988). When the indictment is not sufficiently specific, dismissal is not necessarily required. "While a trial court may dismiss an indictment for improper venue, . . . the failure to adequately allege the basis for venue generally should be addressed in the first instance not by dismissing the indictment but through a bill of particulars." *United States v. Trie*, 21 F. Supp. 2d 7, 17 (D.D.C. 1998); *see United States v. Honneus,* 508 F.2d 566, 570 (1st Cir. 1974).

Here, Count 1 of the *Indictment* alleges that the carjacking in Colorado resulted in serious bodily injury to J.K., but does not specify that the injury occurred in New Mexico. [Doc. 2] Thus, Count I of the *Indictment* is facially inadequate to allege venue in New Mexico. The Court will, therefore, order the Government to provide a bill of particulars addressing the facts it will adduce to establish venue in New Mexico, if the Government has not filed a superseding indictment. After receipt of the bill of particulars or upon filing of a superseding indictment, Defendant may renew his motion to dismiss if the Government's allegations remain insufficiently specific as to venue. *See United States v. Wilson*, No. 01 CR. 53 (DLC), 2001 WL 798018, at *6 (S.D.N.Y. July 13, 2001) (denying the defendants' motion to dismiss, ordering a bill of particulars "describing facts [the Government] intends to establish at trial which it claims are sufficient to establish venue," and giving the defendant leave to renew the motion to dismiss). Of

course, Defendant may also raise the issue if the Government's proof at trial fails to establish venue by a preponderance of the evidence.

## 2. The Parties' Substantive Arguments

In seeming recognition of the fact that facial inadequacies of the *Indictment* may be cured by a bill of particulars, Defendant instead advances arguments as to the scope of carjacking as a matter of law. Defendant makes two arguments for why New Mexico is not the proper venue for Count I. First, he argues that "the thrust of carjacking is the taking of the car, not the carrying away of the car" and that the carjacking here "ended when P.J. was divested of her possession of the vehicle" in Colorado. [Doc. 16, pg. 4] Second, he argues that, even if the crime of carjacking generally continues beyond the initial taking of the vehicle, the crime here ended when Defendant reached a point of "temporary safety." [Doc. 16, pg. 5]

In response, the Government argues that "[t]he duration of carjacking extends beyond the initial taking," and analogizes carjacking to robbery. [Doc. 20, pg. 4] The Government further argues that the crime of carjacking continues through the perpetrator's escape, which ends only when the perpetrator reaches a "place of temporary safety." [Doc. 20, pg. 5] Finally, the Government argues that whether Defendant had reached a point of temporary safety is a factual question. [Doc. 20, pg. 5] The Government also argues that New Mexico is the correct venue as a matter of law because an element of the crime—either the bodily injury to J.K. or the travel in interstate commerce—occurred in New Mexico. [Doc. 20, pg. 5]

In support of his argument that the "thrust of a carjacking is the taking of the car," Defendant cites *United States v. Figueroa-Cartegena*, 612 F.3d 69, 77 (1st Cir. 2010) (Lipez, J., Section C). [Doc. 16, pg. 4] In the section of the opinion cited by Defendant, the *Figueroa-Cartegena* Court examined the text of § 2119 and stated that "[a]t the core of the crime of carjacking is the forcible 'taking' of a motor vehicle 'from the person or presence of another.'" *Id*. at 78. It also stated that, at common law, "'[t]aking' was distinct from 'carrying away' (or 'asportation'), which was a separate element and could not occur until *after* the property had been 'taken.'" *Id*. Defendant relies on these statements to argue that a carjacking is complete the moment the vehicle is taken from the owner/possessor. [Doc. 16, pg. 4]

But the portion cited by Defendant is only a part of the *Figueroa-Cartegena* Court's analysis[2] and not part of its holding. In fact, the Court goes on to examine the "nature" of carjacking and Congress's intent behind the statute, and approves of the statement that "flight with the vehicle is inherent to the crime of carjacking, [and] . . . a carjacking continues at least until the perpetrator has won his way to a place of temporary safety." *Id*. at 79-80 (internal quotation marks and citation omitted).

Courts have stated several different formulations of the "temporal limits" of carjacking, none based on the limited view of carjacking proposed by Defendant. *See United States v. Cline*, 362 F.3d 343, 352 (6th Cir. 2004) (stating that "[d]etermining the duration of a carjacking has proved a thorny task for the federal courts" and collecting

---

[2] Moreover, the portion cited is not joined by two of the three judges on the panel. *Figueroa-Cartegena,* 612 F.3d at 77 n.11.

cases). Some courts have focused their analysis on how long the perpetrator maintained control over the owner/possessor of the car and the car itself. *See, e.g., Figueroa-Cartagena*, 612 F.3d at 83 (stating that "[t]he temporal scope of carjacking is likely to be a recurring issue in this circuit" and relying on *United States v. Ramirez-Burgos*, 313 F.3d at 30 n.9 for the proposition that "carjacking continues at least while the carjacker maintains control over the victim and [his or] her car"); *United States v. Fell*, No. 2:01-CR-12-01, 2005 WL 1026599, at *1 (D. Vt. Apr. 22, 2005) (stating that "kidnaping, once begun, does not end until the victim is free . . . . The same analysis can be applied to the crime of carjacking." (internal quotation marks and citation omitted). Others focus on the moment at which the owner/possessor was separated from the car. *See, e.g.*, *United States v. Hicks*, 103 F.3d 837, 843 (9th Cir. 1996) *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (holding that carjacking continues until the victim has been separated from the car); *People v. Corr*, No. G049408, 2015 WL 9412769, at *5 (Cal. Ct. App. Dec. 22, 2015), *review denied* (Mar. 30, 2016) (stating that "the dispossession necessary for carjacking occurs not only when the perpetrator physically forces the victim out of the vehicle, but also when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear. In the latter instance, when a victim remains in the car, carjacking is by nature a continuing offense" (interpreting state law)).

Still others have held that carjacking, a species of robbery, is a continuing crime that extends through the perpetrator's escape from pursuit. *See Jones v. United States*, 526 U.S. 227, 235 (1999) (stating that "carjacking is a type of robbery"); 4 Wharton's

Criminal Law § 468 (15th ed.) ("A relatively modern variation of robbery is the offense of 'carjacking'"). The First Circuit has held explicitly that "[c]arjacking, being a species of robbery, follows the same general analysis: flight with the vehicle is inherent to the crime." *United States v. Martinez-Bermudez*, 387 F.3d 98, 102 (1st Cir. 2004) (footnote omitted). [Doc. 20, pg. 4]

Neither Defendant nor the Government cites a Tenth Circuit case addressing the duration of a carjacking. However, Tenth Circuit robbery law holds that "the escape phase of a crime is not an event occurring 'after the robbery.' It is part of the robbery." *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir. 1970), *vacated on other grounds by Schreiner v. United States*, 404 U.S. 67 (1971); *see United States v. Garcia-Caraveo*, 586 F.3d 1230, 1236 (10th Cir. 2009) (stating that "the uniform generic definition of robbery incorporates the continuing offense theory"). Moreover, the carjacking statute was based on the bank robbery statute, and the escape rule has been applied to bank robbery. *See United States v. Williams*, 344 F.3d 365, 372 (3d Cir. 2003) (stating that "[t]he other courts of appeals that have considered whether escape is a part of the bank robbery also have determined that it is"); *see also Figueroa-Cartagena*, 612 F.3d at 80 (stating that the Bank Robbery Act served as a model for the carjacking statute).

Applying these principles, the Court concludes that the carjacking here continued so long as Defendant was still in flight. Whether and when such flight ended, either because Defendant reached a point of temporary safety or through some other intervening event, is a question of fact for the jury. *See United States v. Burton*, 121 F. App'x 318,

323 (10th Cir. 2005) (unpublished) (stating that when escape ends is a "fact-based inquiry") (internal quotation marks and citation omitted)); *Samuels v. Hernandez*, No. CV 07-1456PSG(FMO), 2009 WL 2730502, at *13 (C.D. Cal. Aug. 25, 2009) (stating that the issue of whether a defendant has reached a place of temporary safety is a question of fact for the jury (citation omitted)).

The Government also argues that New Mexico is the proper venue for Count 1 because an essential element of the crime charged—the bodily injury—is alleged to have occurred in New Mexico when Defendant fired the gun and hit J.K. [Doc. 20, pg. 7] Defendant argues that the crime of carjacking ended at least when he reached a point of temporary safety and, therefore, the alleged injuries to J.K. occurred as a wholly separate crime.

The bodily injury element of carjacking need not have been incurred in order to facilitate the carjacking itself. In *United States v. Vazquez-Rivera*, the First Circuit rejected the defendant's argument that "the rape was not the 'result' of the carjacking because it was not intended to assist in the taking of the vehicle." 135 F.3d 172, 178 (1st Cir. 1998). The Court noted that "there is no textual basis for asserting that the injury must be 'necessary to' or 'intended to effectuate' the taking of the vehicle itself." *Id*. "To the contrary, the choice of the word 'results' in the statutory phrase 'if serious bodily injury ... results' suggests that Congress intended to cover a fairly broad range of consequences flowing from a carjacking." *Id*. "Moreover, the legislative history characterized the provision as imposing the enhancement when the carjacking '*involves* bodily injury,' *see* Anti Car Theft Act, Pub.L. No. 102–519, *reprinted in* 1992

U.S.C.A.A.N. 2847, at 2865 (emphasis added), which supports the view that the injuries covered are not limited to those resulting from the 'taking' of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle." *Id*.; *see United States v. Gonzalez-Mercado*, 239 F. Supp. 2d 148, 150 (D.P.R. 2002) (holding that a rape was the "result of" a carjacking were the perpetrator was "in full control of the carjacked vehicle, as he retained the keys to the car, had a victim in its trunk, and the owner under his command").

The Government points to these cases and argues that the injury to J.K. resulted from the carjacking because Defendant still had control of the vehicle when it occurred. [Doc. 20, pg. 11]  The problem with this argument, however, is that there is no temporal or causal limit on the rule.  The *Martinez-Bermudez* court noted as much, stating, "our statement in *Vazquez-Rivera* that the injuries covered under § 2119 'include those caused by the carjacker at any point during his or her retention of the vehicle' must have some logical limit." 387 F.3d at 102 n.6.  It went on, "If the carjacking is so successful that the defendant completely evades capture and simply retains the vehicle for his own use, it cannot be the case that any subsequent traffic accident, after any interval of time whatsoever, is part of the carjacking."  *Id*.  It also acknowledged that "[t]here might be situations in which a carjacker made off with a vehicle, reached a point of temporary safety, and only later was pursued by police.  In such cases the flight might no longer be part of the 'perpetration' of the carjacking." *Id*. at 102.  In that case, the Court ultimately "decline[d] to comment on the theoretical outer boundaries of a carjacking after the victim has been released," but affirmed the district court's ruling that a death occurred

during the perpetration of a carjacking where the perpetrator killed an officer less than an hour after taking the vehicle, and there was no "evidence of an intervening action or event indicating that the carjacking had ended prior to his striking the officer." *Id.* at 102-03. Thus, while not deciding the issue, the *Martinez-Bermudez* court posited that intervening events, such as attaining temporary safety, might cut off a carjacking such that subsequent conduct would be considered separate even if the perpetrator retained the stolen vehicle.

In a similar vein, the Tenth Circuit has stated, in the context of a charge for using or carrying a weapon "during and in relation to" a robbery, that "escape does end at some point, such that the concept of 'during and in relation to' will have some boundaries as a matter of common sense. But we believe that it is a fact-based inquiry[.]" *Burton*, 121 F. App'x at 323 (unpublished) (internal quotation marks and citation omitted); *id.* (stating that "a bright line rule on when an escape or flight phase ends might not adequately take into account some of the unique factual scenarios underlying escape and flight cases").

Considering these cases together, the Court concludes that whether bodily injury to J.K. "resulted from" the carjacking is a function of whether the carjacking was continuing when it occurred. This question, in turn, depends on whether Defendant was still escaping at the time or whether other intervening events had ended Defendant's flight. As already determined, these are factual questions for the jury.

Third and finally, the Government argues that venue is proper in New Mexico because the car-jacked vehicle moved from Colorado into New Mexico. [Doc. 20, pg. 11] Section 2119 defines carjacking as the "tak[ing of] a motor vehicle that *has been*

*transported, shipped, or received in interstate or foreign commerce* from the person or presence of another by force and violence or by intimidation" "with the intent to cause death or serious bodily harm." 18 U.S.C. § 2119 (emphasis added). The Government's argument rests on the premise that venue is proper wherever any element of the crime occurs. [Doc. 20. Pg. 5] Thus, the Government argues, venue is proper in New Mexico as a matter of law because the car was taken from Colorado to New Mexico by Defendant.

The Court is not persuaded by this argument. First, there is a difference between "essential *conduct* elements," as discussed in *Rodriguez-Moreno,* and other essential elements. Venue is proper in the district in which criminal conduct occurs, not where any element occurs. *Rodriguez–Moreno,* 526 U.S. at 279 ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."). For example, in *United States v. Bowens*, the Fourth Circuit held that, although "the issuance of a federal arrest warrant is an essential element of the [statute at issue] . . . [v]enue does not necessarily lie, . . . in every district where an essential element of the offense has transpired. Rather, venue is limited to the place 'where the criminal act is done.'" 224 F.3d 302, 309 (4th Cir. 2000) (quoting *United States v. Anderson,* 328 U.S. 699, 705 (1946)). Echoing *Rodriguez-Moreno*, it went on, "We understand this requirement to limit venue in a criminal trial to the place of the essential *conduct* elements of the offense. The only *conduct* proscribed by [the applicable statute] is the act of harboring or concealing the fugitive. Consequently, venue will lie only where acts of harboring or

concealing take place." *Bowens*, 224 F.3d at 309. *See also United States v. Strain*, 396 F.3d 689, 694 (5th Cir. 2005) (describing "'circumstance elements' of the offense" as elements that "do not involve any proscribed conduct by the accused"); *United States v. Smallwood*, 293 F. Supp. 2d 631, 638 (E.D. Va. 2003) (stating that "venue may lie in any district in which an 'essential conduct element' of the offense occurred; venue is not proper in a district in which a mere circumstance element occurred" (footnotes omitted)); *United States v. Donahue*, No. 3:11-CR-0033, 2014 WL 6388446, at *3 (M.D. Pa. Nov. 14, 2014) (stating that "[i]n conducting [its venue] inquiry, a court must be careful to separate 'essential conduct elements' from 'circumstance elements,'" (quoting *Rodriguez–Moreno,* 526 U.S. at 280 & n. 4) and that "only 'essential conduct elements' can provide the basis for venue; 'circumstance elements' cannot."). Here, the "conduct elements" of § 2119 are the "taking" and use of "force or intimidation." *See United States v. Checora*, 155 F. Supp. 3d 1192, 1197 (D. Utah 2015) (stating that "in a carjacking case, courts look to the conduct elements of taking a car by force or intimidation"). While proof that the car had traveled in interstate commerce is an essential element of the crime, is not an essential *conduct* element and, therefore, cannot be a basis for venue.

Second, to the extent the Government relies on *United States v. Lowe* for the proposition that venue is proper in either state when a carjacker takes a car across state lines, *Lowe* is inapposite because the holding there is not as broad as the Government

suggests and it is clearly distinguishable on its facts.³ *United States v. Lowe*, 924 F. Supp. 318, 320 (D. Mass. 1996). In that case, the court stated, "The Government alleges that Lowe forcibly took the victim's car and drove her *across state lines* from Lowell, Massachusetts, to New Hampshire and back. If proven, this conduct amply establishes the nexus with interstate commerce necessary to fulfil the jurisdictional predicates . . . ." Notably, in *Lowe*, the perpetrator took both the victim and the car across state lines. *Id*. Thus, under most courts' analyses, the carjacking was clearly continuing when the vehicle crossed from Massachusetts to New Hampshire. The holding, therefore, does not stand for the proposition that movement of a car across state lines at any point after it was taken satisfies the interstate commerce element. Moreover, in contrast to *Lowe*, here Defendant allegedly took only the car away from the rest stop in Colorado.

### III. Conclusion

The Court need not "draw a precise line demarcating the termination of any and all carjackings," *Cline*, 362 F.3d at 353, because whether any part of the carjacking occurred in New Mexico depends on the duration and location of Defendant's escape from the Colorado rest stop with P.J.'s car. Whether Defendant reached a point of temporary

---

³ The Court notes that several courts have held that "the statute applies only if the stolen car at issue is 'transported, shipped or received' in interstate commerce prior to the theft." *United States v. Watson*, 815 F. Supp. 827, 830 (E.D. Pa. 1993), *aff'd,* 26 F.3d 124 (3d Cir. 1994) (footnote omitted); *United States v. Bell*, 608 F. Supp. 2d 1257, 1262 (D. Kan. 2009) ("Congress explicitly required that the carjacked vehicle have previously been transported, shipped, or received in interstate or foreign commerce."). Defendant does not dispute that the vehicle in question here traveled in interstate commerce before the alleged carjacking. [Doc. 22, pg. 6] However, other courts have held that transport of the car after the theft satisfied this element. *See, e.g.*, *Lowe*, 924 F. Supp. at 320. Resolution of this issue is not necessary here.

safety before entering New Mexico or before the encounter with J.K. in New Mexico, and, importantly, *where* he was when he did so, is a question of fact to be determined by the jury.

For the foregoing reasons, the Court will deny without prejudice Defendant's *Motion to Dismiss Count One of the Indictment for Improper Venue* [Doc. 16]. In addition, if a superseding indictment is not filed, the Court will order the Government to submit a bill of particulars for Count I that addresses the deficiencies in the *Indictment* as discussed above.

**IT IS THEREFORE HEREBY ORDERED** that *Defendant's Motion to Dismiss Count One of Indictment for Improper Venue* [Doc. 16] is **DENIED WITHOUT PREJUDICE,** and with leave to renew.

**IT IS FURTHER ORDERED** that the Government shall, if it has not filed a superseding indictment by January 2, 2018, provide the Defendant by that date with a bill of particulars describing facts it intends to establish at trial which it claims are sufficient to establish venue in this District with respect to Count I.

**SO ORDERED this 29th day of November, 2017.**

                                          **M. CHRISTINA ARMIJO**
                                          **Chief United States District Judge**