IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO.  17-182 JCH |
| | ) | |
| vs. | ) | |
| | ) | |
| **JUAN CARLOS VILLALOBOS**, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

COMES NOW, the United States and responds to defendant's Motion to Withdraw Guilty Plea.   Doc. 16.   The government respectfully requests that the Court deny defendant's motion.

## PROCEDURAL BACKGROUND

On December 20, 2017, a federal grand jury returned a superseding indictment against defendant Juan Carlos Villalobos-Macias (Villalobos), charging him with one count of carjacking, one count of attempted carjacking, and two counts of using, carrying and discharging a firearm during a crime of violence.   Each of the firearms crimes, counts 2 and 4, were linked to one of the carjacking counts, counts 1 and 3.   Doc. 35.

On March 1, 2019, Villalobos entered guilty pleas to attempted carjacking as set forth in count 3 and the use, carrying and discharging of a firearm in connection with the carjacking as set forth in count 4.   Doc. 74.   Pursuant to a plea agreement, the government agreed to dismiss counts 1 and 2 and further stipulated pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

to a sentence of between 15 and 20 years.    Doc.    75.    On May 20, 2020, Villalobos filed a

motion to withdraw his guilty pleas.    Doc. 105.

## FACTS

On December 28, 2016, defendant Juan Carlos Villalobos approached P.J. while she and

her husband were at the Pinon Rest Stop near Pueblo, Colorado.    P.J. was sitting in the

passenger seat of her car, a white Toyota RAV4.    The husband was not in the vehicle.

Defendant Villalobos threatened P.J. with a silver revolver and fired a shot.    He then shattered

the driver's side window of the car, ostensibly using the revolver as a club.

P.J. ran from the car, dropping her purse. Villalobos picked up the purse got into P.J.'s

RAV4 and drove it south on Interstate 25 into New Mexico.

Later that day, on I-25 near Wagon Mound, New Mexico, Villalobos attempted to carjack

a second vehicle, a gold Ford Edge.    Using the silver revolver, Villalobos fired shots into the

passenger door, passenger side pillar and rear hatch of the Edge, wounding the driver in the

hand.    At the time of the shooting, Villalobos still had in his possession, and was still driving,

the white Toyota RAV4, which he took, at gunpoint, from P.J.    At one point, Villalobos exited

the vehicle and fired shots at the passenger and driver of the gold Ford SUV from the highway.

After firing shots at the two people inside the Edge, Villalobos got back into the RAV4 and fled.

New Mexico state police officers were able to intercept the RAV4 as it sped south along

Interstate 25, and a chase ensued.    Villalobos exited the RAV4 and began walking away from

the vehicle.    State police officers arrested him.

**THE GUILTY PLEA**

A.  Rule 11 of the Rules of Criminal Procedure

Rule 11 of the Rules of Criminal Procedures governs the procedure for change of plea hearings:

(a) Entering a Plea.

(1) In General. A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere.

****

(b) Considering and Accepting a Guilty or Nolo Contendere Plea.

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and

term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

(2) Ensuring That a Plea Is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

****

Fed. R. Crim. P. 11.

B.  The Plea Agreement

Before pleading guilty, defendant Villalobos signed a plea agreement with the

government:  Exhibit 1 to this Response.   The plea agreement contained the following language

pertinent to this discussion and this motion:

1.      The Defendant understands the Defendant's right to be represented by an attorney and is so represented.  **The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.**
.

4

\*\*\*\*

2.      The Defendant further understands the Defendant's rights:

a.      to plead not guilty, or having already so pleaded, to persist in that
plea;

b.      to have a trial by jury; and

c.      at a trial:

d.      to confront and cross-examine adverse witnesses,

e.      to be protected from compelled self-incrimination,

f.      to testify and present evidence on the Defendant's own behalf, and

g.      to compel the attendance of witnesses for the defense.

\*\*\*\*

**The Defendant agrees to waive these rights and to plead guilty to
Count 2 of the superseding indictment (Doc. 35), charging a violation of 18
U.S.C. § 2119, that being Attempted Carjacking, and Count 4 of the
superseding indictment (Doc. 35), charging a violation of 18 U.S.C. § 924(c),
that being Using, Carrying, and Discharging a Firearm During and in
Relation to a Crime of Violence, and Possessing and Discharging a Firearm
in Furtherance the Crime.**

\*\*\*\*

**This agreement has been read to me in a language I understand.   I
have carefully discussed every part of this agreement with my attorney.   I
understand the terms of this agreement, and I voluntarily agree to those
terms.   My attorney has advised me of my rights, of possible defenses, of the
sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing
Guidelines provisions, and of the consequences of entering into this
agreement.**

_____

Juan Carlos Villalobos
Defendant

Exhibit 1.

5

Additionally, in the plea agreement, the defendant waived his right to withdraw his guilty plea unless the Court rejected it or the defendant could meet the standard for withdrawal set forth in Rule 11(d) of the Federal Rules of Criminal Procedure:

> By signing this plea agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal. Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

Exhibit 1 at pgs. 7-8, paragraph 18.

A. The Law Governing a Motion to Withdraw a Guilty Plea

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure governs a motion to withdraw a guilty plea before the imposition of a sentence, and provides that a defendant may withdraw a plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).   Defendants do not have an absolute right to withdraw a guilty plea.  *See United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir.2000).

The defendant bears the burden of demonstrating a "fair and just reason" for withdrawal of the plea.  *United States v. Griffin*, 191 Fed. Appx. 699, 701 (10th Cir.2006)(unpublished).   In reaching their decisions, courts have acknowledged that "[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992).

When a defendant enters a voluntary guilty plea, the defendant waives his or her right to

challenge antecedent, non-jurisdictional errors not logically inconsistent with the establishment of guilt.  *See Menna v. New York*, 423 U.S. 61, 62–63 (1975); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (when defendant pleads guilty voluntarily, he waives challenges to deprivations of constitutional rights occurring prior to guilty plea).

The Tenth Circuit has held that, when a defendant moves to withdraw a guilty plea before sentencing, the district court must assess whether there is a fair and just reason for withdrawal based on the following factors: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.  *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir.2005).   While treated sometimes as an eighth factor, a district court may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal of a guilty plea.  *United States v. Carr*, 80 F.3d 413, 421 n. 5 (10th Cir.1996)(recognizing that the Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction") *(citing United States v. Glover*, 911 F.2d 419, 421 (10th Cir.1990)).

The Tenth Circuit later renumbered these factors, in order of importance, explaining that the "primary considerations for determining whether a fair and just reason exists are whether the defendant (1) knowingly and voluntarily pled guilty, (2) had assistance of counsel relating to the decision to plead guilty, and (3) has asserted his innocence." *United States v. Lee*, 535 Fed. Appx. 677, 680 (10th Cir.2013) (unpublished).   These are the factors that "speak to . . . the

defendant's reason for withdrawal." *United States v. Lee*, 535 Fed. Appx. at 680 (quoting *United States v. Hamilton*, 510 F.3d 1209, 1217 (10th Cir. 2007).  "If the defendant demonstrates a fair and just reason for withdrawing his guilty plea, the court may also consider systemic burdens"—the other four *United States v. Yazzie* factors, including "prejudice to the government, timing of the motion, inconvenience to the court, and waste of judicial resources." *Lee*, 535 Fed. Appx. at 680 & n. 3 (citing *Hamilton*, 510 F.3d at 1214).

B. The First *Yazzie* Factor: The Defendant Knowingly and Voluntarily Pled Guilty to Attempted Carjacking and the Use, Carrying and Discharge of a Firearm During a Crime of Violence.

A defendant's guilty plea must be knowing and voluntary.  *See United States v. Libretti*, 38 F.3d 523, 529 (10th Cir.1994).  In his motion, defendant Villalobos claims that, based on his prior attorney's misrepresentations, he misunderstood Judge Christina Armijo's order denying his motion to dismiss counts 1 and 2 of the indictment based on venue.  Doc. 105.  The crimes charged in those counts occurred both in New Mexico and Colorado.  Mr. Villalobos claims he did not understand that a jury, not a judge, would decide whether the District of New Mexico had venue over the offenses that occurred in both Colorado and New Mexico.  **Importantly, these crimes are those to which the defendant did not plead guilty**[1.]  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what **the plea connotes and of its consequence**."  *Boykin v. Alabama*, 395 U.S. 238, 244 (1969) [emphasis added].  A defendant must understand **only the plea's "direct consequences."** *United States v. Hurlich*,

---

1  If the defendant is allowed to withdraw his plea, the United States plans to file motion to reconsider Judge Armijo's Order.   The United States will not ask the Court to reconsider Judge Armijo's conclusion that the issue of venue was a factual issue for the jury to decide, but the United States will ask the Court to reconsider Judge Armijo's rationale as to what the jury must determine in order for the District of New Mexico to have venue over the offense.

293 F.3d 1223, 1230 (10th Cir.2002) [emphasis added].

The indirect consequences of foregoing defenses to crimes to which the defendant did not plead guilty are, therefore, irrelevant.   Rather, these indirect consequences go to Mr. Villalobos' decision as to whether he should accept the government's plea offer or reject it and are discussed in a subsequent section of this response.   The factors regarding his decision to plead guilty are not relevant to whether or not Villalobos understood the charges to which he was pleading guilty, that being counts 3 and 4 of the indictment, and the direct consequences of pleading guilty to those charges.   *Id*.

In assessing a motion to withdraw a guilty plea, courts should give particular weight to knowing and voluntary statements that the defendant made under oath at the plea hearing.   *See United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir.1995).   Prior to accepting a guilty plea, a district or magistrate judge, through colloquy with the defendant, must inform the defendant of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty he faces, and the various rights he is relinquishing by pleading guilty.   Fed. R. Crim. P. 11(b).   The court must determine that the defendant understands these charges, penalties and rights being relinquished.   *Id*.   The court also must determine whether there is a factual basis for the plea.   *Id*.; *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir.1991).   The purpose of the Rule 11 colloquy is to ensure that the plea of guilt is entered into knowingly and voluntarily.   *See United States v. Vonn*, 535 U.S. 55, 58 (2002).

At the plea hearing, Villalobos swore to testify truthfully under penalty of perjury and agreed to testify truthfully.   Transcript of Plea Hearing (TPH) on March 1, 2019, at pg. 4, lines 13-17, Attached as Exhibit 2.   The Honorable Jerry Ritter, United States Magistrate Judge for

the District of New Mexico, asked Villalobos if anyone had threatened, pressured or forced him

to plead guilty to counts 3 and 4 of the indictment to which Villalobos answered "no."   TPH at

pg. 5, lines 14-16 (Judge Ritter, Villalobos).   Judge Ritter explained all of rights to which

Villalobos was relinquishing by pleading guilty and Villalobos said he understood those rights

which he was relinquishing.   TPH at pg. 3, lines 1-15 (Judge Ritter, Villalobos)."   Judge Ritter

asked if Villalobos had read through the factual basis for his plea as contained in the plea

agreement and if those facts were "completely accurate as to what [Villalobos] did." Villalobos

replied "yes," the factual basis was completely accurate.   TPH at pg. 14, lines 23-24, pg. 15,

lines 1-3 (Judge Ritter, Villalobos).   "Judge Ritter asked Villalobos if he was satisfied with the

advice and representation of his attorney, Assistant Federal Public Attorney Devon Fooks, to

which Villalobos responded "yes."   TPH at pgs. 14, 15, lines 22-24, 1-2 (Judge Ritter,

Villalobos).   Judge Ritter advised Villalobos that the plea agreement stipulated to a sentence of

between 15 and 20 years and asked whether or not Villalobos understood the stipulation to which

Villalobos responded in the affirmative.   TPH at pg. 10, lines 23-25, .pg. 11, lines 1-2 (Judge

Ritter, Villalobos).   Villalobos then pled guilty to counts 3 and 4 of the indictment; Judge Ritter

accepted his plea and adjudged him guilty.   TPH at pg. 14, line 11, pg. 16, lines 13-11 (Judge

Ritter).

        Mr. Villalobos clearly understood the direct consequences of his guilty plea and

answered under oath that he understood the plea and that he was satisfied with his attorney.

After an extensive explanation of the plea, its potential consequences and rights he was

relinquishing, Mr. Villalobos voluntarily entered guilty pleas to counts 3 and 4 of the indictment.

Therefore, Mr. Villalobos' plea was knowing and voluntary.

C. *Yazzie* Factor 2: Mr. Villalobos Had Assistance of Counsel Relating to the Decision
to Plead Guilty.

Villalobos complaints that had got bad advice from his prior attorney, Mr. Fooks.   While

Villalobos now complains that he dislikes the advice he received, the fact remains that Villalobos

had assistance of skilled counsel before and during his plea hearing.   The Court should consider

whether a defendant was represented by "skilled and respected counsel."   *United States v.*

*Siedlik*, 231 F.3d at 750. *See United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir.2009).   Mr.

Fooks has been an attorney for twenty-four years,[2] has done criminal defense work for most of

that time and is highly-respected in the legal community.   Although Villalobos's relationship

with Mr. Fooks broke down after the plea hearing, there is no evidence that Mr. Fooks did not

adequately prepare Villalobos for the plea colloquy and to sign the Plea Agreement.

Despite his sworn testimony that he was not pressured into signing the plea

agreement, Villalobos complains now in his motion that Mr. Fooks did not provide him

with information regarding the charges the government had agreed to dismiss as part of

the plea agreement and that he might be able to prevail at trial on the charges to which he

pled guilty:

> Counsel [Mr. Couleur] has confirmed with prior counsel [Mr. Fooks] that he did
> not explain to the Defendant that the facts necessary to support venue in New
> Mexico were questions of fact to be determined by the jury. Had the Defendant
> known this, he would not have accepted a plea agreement that called for a
> sentence of 15-20 years. This is an entirely reasonable assertion by the Defendant.
> If convicted, the mandatory minimum of 20 years, is the top of the range in the
> plea agreement.   But, if acquitted of Counts I & III, the Defendant would be
> facing a 10 year mandatory minimum, and a guideline range of 37-63 months
> depending on whether he received acceptance of responsibility. In short, the
> Defendant did not enter into the plea knowingly, because he did not know that he
> had a defense that impacted the possible penalties as described above.

---

2  The undersigned prosecutor went to law school with Mr. Fooks.

> [T]he Defendant asserts that prior counsel was ineffective for not informing him that he had the legal defense at trial of lack of venue.

Doc. 105 at pg. 1-2.

> [E]ven accepting as true all the facts alleged regarding Counts II & IV, there is a legal question as to whether pointing and discharging a gun at JK and his wife was sufficient to establish attempted carjacking. The Defendant waived his right to a jury trial on that issue because he did not know he could defend the venue issue at trial. The Defendant told prior counsel that he wanted to go to trial on the attempted carjacking charge because of the lack of evidence that he was trying to take JK's car. Prior counsel believes that he discussed the elements of attempted carjacking with the Defendant.

Doc. 105, pgs. 2 and 3.

If Villalobos had faced only a single § 924(c)(1)(A) charge, combined with the discharge of the firearm, he could have received a sentence of between 10 years to life in prison.   18 U.S.C. § 924(c)(1)(A)(i)-(iii).   However, Mr. Villalobos committed two carjackings on two separate occasions in different states and involving different victims.   Thus, these are separate and distinct units of prosecution and separate § 924(c) convictions for purposes of sentencing.   § 924(c); *United States v. Rentz*, 777 F.3d 1105, 1113 (10th Cir. 2015).   Section 924(c) provides for a five-year (or longer) mandatory minimum prison sentence for using, carrying, or possessing a firearm during a crime of violence.   18 U.S.C. §§ 924(c)(1)(A)(i–iii), (B)(i–ii) (setting forth minimum sentences of five years; seven years if firearm is brandished; ten years if firearm is discharged; and ten or thirty years if the firearm has certain characteristics).   But it also provides for an even longer mandatory minimum penalty—twenty-five years—for a second or subsequent § 924(c) conviction.   § 924(c)(1)(C)(i).   Further, it mandates that such mandatory sentences for multiple § 924(c) convictions shall not run concurrently with each other or with any other term

of imprisonment imposed on the person.    *See* § 924(c)(1)(D).

Thus, if convicted of all counts in the indictment, the defendant faces a mandatory minimum sentence of 35 years and a maximum sentence of life.    Villalobos' prior attorney, Mr. Fooks, negotiated a plea agreement stipulating to a sentence of 15 to 20 years, an achievement on the part of Mr. Fooks.

A defendant's guilty plea must be free from coercion.    *United States v. Mosely*, 173 F.3d 1318, 1322 (11th Cir.1999).    Here the magistrate judge explicitly asked Villalobos about his counsel and, Villalobos responded that he was satisfied with his representation.    Villalobos stated under oath that he was not pressured into pleading guilty, that he understood the charges and consequences of pleading guilty, and then he pled guilty.

Defendant alleges that he was coerced into the plea when his prior defense counsel told that he could face "a shitload of time," if Mr. Villalobos went trial.    First of all, this statement was entirely accurate.

The defendant in *United States v. Mitchell* argued that the district court's statements that his counsel may have exerted "undue influence" over him rendered his plea involuntary.    *United States v. Mitchell*, 633 F.3d 997, 1001 (10th Cir. 2011).    The Tenth Circuit held that the fact that his counsel used "colorful language"—telling the defendant "'you would be a fool not to take this plea offer!'"—did not approach a constitutionally suspect level of coercion.    *Mitchell* 633 F.3d at 1002.    The Tenth Circuit stated that, even when pressure from counsel may be "palpable," and a defendant alleged he was "hounded, browbeaten, and yelled at," such pressures do not "vitiate the voluntariness of his plea." 633 F.3d at 1002 (citing *United States v. Carr*, 80 F.3d 413, 417 (10th Cir.1996)(analyzing voluntariness where counsel called the defendant

"stupid" and "a fucking idiot")).   The defendant in *Mitchell* also pointed to the breakdown in communication between himself and his attorney to establish that his plea was not knowing and involuntary.   *See Mitchell* at 1001.   The Tenth Circuit found this argument similarly unavailing, and held that the guilty plea and accompanying plea agreement were knowing and voluntary. *Id*. at 1002.

Thus, a plea is not involuntary simply because the attorney strongly urges the defendant to accept a guilty plea—counsel must inform the client that he has no choice but to plead guilty to render a guilty plea involuntary.   *Fields v. Gibson*, 277 F.3d 1203, 1213 (2002).   In *Fields v. Gibson*, the Tenth Circuit said a plea may be involuntary "when an attorney materially misinforms the defendant of the consequences of the plea, e.g., by falsely alleging that promises or guarantees exist," or if "counsel informs the defendant that he has no choice, he must plead guilty." *Fields* 277 F.3d at 1213 (internal quotation marks and citations omitted).   Mr. Fooks did none of these.

Mr. Fooks did not materially misinform Villalobos of the consequences of his plea to the charges to which Villalobos pled guilty.   Counsel may offer advice and even vigorously urge the defendant to plead guilty.   Indeed, one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests.   Advice—even strong urging by counsel does not invalidate a guilty plea."   *Fields* at 1213.   Villalobos has not contended that Mr. Fooks demanded that he plead guilty or gave him no choice, and Villalobos's own statements at the plea hearing indicate that he understood that the choice to plead was ultimately his decision: when Judge Ritter asked him whether anyone attempted to force him to plead guilty, he said "no." TPH at 6:1–3 (Judge Ritter,

Villalobos).   Mr. Fooks's strong urging to accept the plea offer, if that is what happened, does not transform Villalobos's voluntary plea into an involuntary one.

Mr. Villalobos complains that his prior defense counsel did not inform him that the venue issue on counts 1 and 2 of the indictment, the offenses that occurred in Colorado, would be decided by the jury.   There is no way to predict with certainty whether a jury would convict Villalobos of Counts 1 and 2.

In *Brady v. United States*, 397 U.S. 742, at 756–75, the Supreme Court discussed the situation where a defendant decided to plead guilty based on his belief that the law would allow his confession to be used against him, later learns that he may have been able to suppress his confession, and then petitioned the court for collateral relief, arguing that "his plea was an unintelligent and voidable act."   *Brady* at 769. The Supreme Court rejected this attack:

> The Supreme Court observed
>
> The decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.   All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.   Even then the truth will often be in dispute.   In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court.   If proved, would those facts convince a judge or jury of the defendant's guilty?   On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*Id.* at 769–70.   The Supreme Court went on to explain that, when a defendant attacks whether

15

his plea was knowing and voluntary based on the advice his counsel offered, a court should not simply consider whether the counsel's advice was right or wrong, but whether the advice was "within the range of competence demanded of attorneys in criminal cases."  *Id*. at 770–71.

Villalobos has not shown that Mr. Fooks's performance fell below an objective standard of reasonableness; even though Villalobos may, or may not, have had jurisdictional defenses to the counts the government agreed to dismiss as part of the plea agreement.   Mr. Fooks may have misjudged the odds of success at trial.   Misjudgment is not enough to show that Mr. Fooks' advice was outside the range of competence demanded of attorneys in criminal cases.

As set forth above, the Court must consider whether Villalobos understood the consequences of his plea, and whether he understood the proceedings—and it is clear from the record that Villalobos understood the consequences of pleading guilty.   "The defendant need not understand every **collateral consequence** of the plea, but need only understand its direct consequences," *United States v. Hurlich*, 293 F.3d at 1230. 1230–31 (2002) (quoting *Wall v. United States*, 500 F.2d 38, 39 (10th Cir.1974)(per curiam))[emphasis added]; *see Padilla v. Kentucky*, 559 U.S. at 374.   "Consequences of a guilty plea unrelated to the length and nature of the federal sentence are not direct consequences."   *United States v. Hurlich*, 293 F.3d at 1231 (citations omitted). "[T]he 'knowing and voluntary' inquiry focuses on whether [a defendant] in fact did understand the proceedings."   *Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir.2004). Villalobos's statements at the hearing indicate that he understood the proceedings, understood that he was giving up the right to a trial, and understood that he was accepting a sentence between 15 and 20 years; he has not since contested that he misunderstood what took place at the plea hearing.   The possibility that Villalobos did not understand the collateral consequences of

foregoing a trial on charges that were to be dismissed government does not render his plea involuntary.

The Tenth Circuit held that a failure to ensure that the defendant understands that he is giving up potential defenses is not fatal to the knowing and voluntary nature of the plea.  *United States v. Hickok*, 907 F.2d 983, 985 (10th Cir.1990).   Rather, it seems that the Tenth Circuit focuses on whether the court taking the defendant's plea has complied with Rule 11 of the Federal Rules of Criminal Procedure, *Id.* at 985(noting that by pleading guilty, the defendant waives all non-jurisdictional defenses, and that, before accepting a guilty plea, a court must determine that the defendant understands that he is waiving the right to trial under Rule 11(c)(4)).   Rule 11 does not specifically require the court to ensure that the defendant understands his defenses or that he is waiving his defenses by pleading guilty.   *See* Fed. R. Crim. P. 11.

The Tenth Circuit has recognized that the question whether the defendant had assistance of counsel may require the same analysis as ineffective assistance-of-counsel claims.   *See Lee*, 535 Fed. Appx. at 680 n. 2 (2013)("[D]espite the differences between the two issues, we have analyzed challenges to the assistance of counsel made in th[e] context [of motions to withdraw guilty pleas] under the cause-and-prejudice standard applicable to Sixth Amendment ineffective-assistance-of-counsel claims."); 510 F.3d at 1216. "To demonstrate ineffectiveness, [Villalobos] 'must show both (1) that counsel's performance was deficient and (2) that his deficiency prejudiced his defense.' " *Lee*, 535 Fed. Appx. at 681 (emphasis in original)(quoting *Hamilton*, 510 F.3d at 1216). "Counsel's performance is deficient when it falls 'outside the wide range of competence demanded of attorneys in criminal cases.' " *Lee*, 535 Fed. Appx. at 681 (quoting

*Hamilton*, 510 F.3d at 1216).   Villalobos must show that Mr. Fooks' conduct fell below an objective standard of reasonableness.   *Strickland v. Washington*, 466 U.S. 668 at 687–88 (1984). "Judicial scrutiny of counsel's performance must be highly deferential."   *Strickland v. Washington*, 466 U.S. at 689.   Although neither the plea agreement nor the plea colloquy clearly indicate that Villalobos understood that he was giving up his potential defenses, this omission is not fatal to his knowing and voluntary plea.   Pleading guilty "frequently involves the making of difficult judgments," and "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts."   *McMann v. Richardson*, 397 U.S. 759, 769 (1970). The Court cannot fully weigh the likelihood of success without deciding an ultimate issue of fact left for the jury to decide.

Mr. Fooks' filed the motion to dismiss counts of the indictment based on lack of venue. Doc. 16.   Mr. Fooks' understood the legal issues and Judge Armijo's ruling, perhaps, better than anyone.   It was objectively reasonable for Mr. Fooks to strongly recommend that Villalobos accept the plea offer to 15 to 20 years; instead of risking an adverse decision from the jury, after which Mr. Villalobos would have faced a sentence of 35 years to life.

D.  <u>The Defendant Has Not Asserted His Innocence.</u>

Villalobos has not asserted his innocence, although Villalobos claims he misunderstood who would determine venue as to charges that the government agreed to dismiss, counts 1 and 2 of the indictment.   He has not clearly asserted that he is innocent of the charged offenses to which he did plead guilty, counts 3 and 4 of the indictment.   To satisfy the first factor based on an assertion of legal innocence, the Tenth Circuit has held that a defendant must present a

"credible claim of legal innocence," *Hamilton*, 510 F.3d at 1214, and that a "defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty," *United States v. Hickok*, 907 F.2d 983, 985 n. 2 (10th Cir.1990).    Villalobos claims only that he misunderstood legal defenses to charges to which he did not plead guilty, not that he did not commit the acts that led to the charges to which he did plead guilty.    This distinction is critical to analysis.    This misunderstanding about charges in the indictment, which the government agreed to dismiss is irrelevant to whether or not Mr. Villalobos understood the charges to which he did plead guilty.

Villalobos does not dispute that he held one woman at gunpoint, took her vehicle in Colorado and then tried to kill two more innocent travelers in New Mexico.    Those facts remain disputed.    Rather, he claims he that might be able to convince a jury that he opened fired on the second set of victims for no particular reason or because he thought they were following him.

This is a dangerous path for the defendant and defense counsel to tread.    It represents nothing short of an attempt to perpetrate a fraud on the Court.    Villalobos and his current defense counsel would, in theory, advance a defense at trial that they both know to be false. Villalobos swore under oath at the plea hearing that he attempted to carjack the vehicle in New Mexico by opening fire on the occupants.    Even if Villalobos is allowed to withdraw his plea, his sworn statements remain sworn statements, and the United States would seek to introduce them at trial against him.    *See* Exhibit 1 at pg. 7; *United States v. Jim*, 839 F.Supp.2d 1157 (D.N.M.2012)(Browning, J.).    To walk away from the truth and advance a known falsehood to the jury, in hopes of gaining an acquittal, would constitute a subversion of the truth-finding purpose of a criminal trial and a miscarriage of justice.

19

E. The Fourth, Fifth and Sixth *Yazzie* Factors: The Delay in Filing the Motion to
Withdraw His Guilty Plea Was Significant, the Delay Will Prejudice the Government
and a Trial Would Constitute an Inefficient Use of Judicial resources.

The Tenth Circuit has recognized that requiring the United States to try a case it would

not otherwise have to try, particularly when preparation for the trial will be difficult, results in

prejudice to the United States. *See United States v. Jones*, 168 F.3d 1217, 1220 (10th

Cir.1999)(finding that allowing the defendant to withdraw his plea "could also prejudice the

government," because the "government will face the presumably difficult task of locating

confidential informants").   Indeed, if every defendant were allowed to wait until the evidence

against him or her had grown stale, and was then permitted to withdraw a guilty plea, the United

States would be severely handicapped in its ability to prosecute criminal cases.

The United States will be prejudiced if Villalobos is allowed to withdraw his plea,

because the victims and other witnesses must be located three years after the crimes were

committed.   The witnesses' memories of what happened will, obviously, not be as fresh as they

would have been had Villalobos had insisted on a trial in the first place.   The Tenth Circuit has

recognized that requiring the United States to try a case it would not otherwise have to try,

particularly when preparation for the trial will be difficult, results in prejudice to the United

States.   *Jones*, 168 F.3d at 1220 (finding that allowing the defendant to withdraw his plea "could

also prejudice the government," because the "government will face the presumably difficult task

of locating confidential informants").

Villalobos filed his motion to withdraw his guilty plea a year and three months after the

plea hearing, which is a significant amount of time.   *See United States v. Kramer*, 168 F.3d

1196, 1202 (10th Cir.1999)(recognizing that an eight-month delay and a motion to withdraw a

guilty plea filed on "the eve of sentencing" constituted delay).   The delay and the reasons for the delay are, by their very nature, fact specific.

Turning to the last of these factors—whether the withdrawal will substantially inconvenience the Court or waste judicial resources— there will almost always be inconvenience or resource allocation when a case that has settled goes to trial.   In previous cases, the Court has recognized that the gravity of the defendant's circumstances in a given case influences whether "the withdrawal of his plea, with all that it implies, would substantially inconvenience the Court or waste judicial resources."   *United States v. Harmon*, 871 F.Supp.2d at 1172. *See United States v. Gould*, 2006 WL 4061159, at *3.   If the Court allows Villalobos to withdraw his guilty plea, it will likely the Court have to hold hearings on several pretrial motions and would then proceed to a jury trial.   There is no doubt that this will create a lot judicial work in a busy district like New Mexico.

F.   The "Eighth" *Yazzie* Factor: The Likelihood of a Conviction at Trial

While treated sometimes as an eighth factor, a district court may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal of a guilty plea.   *See United States v. Carr*, 80 F.3d at 421 n. 5 (recognizing that the Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction" (citing *United States v. Glover,* 911 F.2d 419, 421 (10th Cir.1990)).   It's important to note that a large part of Villalobos' motion is devoted to arguing that he is legally innocent of charges to which he did not plead guilty.   The only charges to which Villalobos pled guilty were the attempted carjacking of the second vehicle in New Mexico and using a firearm in his attempt to carjack the vehicle.   Even though, Villalobos admitted under oath that he was attempting to carjack the vehicle, he now he thinks

that he can convince the jury that there is some other reason why he would open fire on two

innocent travelers.   The likelihood of conviction is relevant here, either in the context of the two

factors of whether withdrawal would substantially inconvenience the Court or waste judicial

resources, or as an additional factor on its own.   Along with his confession under oath, the

evidence supports a conviction.   Mr. Villalobos drove the carjacked vehicle from Pueblo,

Colorado into New Mexico.   He was out of gas.   When the RAV4 was recovered, the fuel tank

was practically empty.   The only logical reason he would open fire on two innocent travelers is

that he needed another vehicle with more fuel.   If Villalobos were to proceed to trial, the odds of

a conviction are likely.

## VILLALOBOS' SWORN STATEMENTS DURING THE PLEA COLLOQUY ARE ADMISSIBLE EVIDENCE AT TRIAL

The general rule is that evidence of a guilty plea is inadmissible evidence.   Fed. R. Evid.

410; *United States v. Mitchell*, 633 F.3d 997, 1002 (10th Cir.2011).   Rule 410 provides:

Pleas, Plea Discussions, and Related Statements

(a) Prohibited Uses.

In a civil or criminal case, evidence of the following is not admissible
against the defendant who made the plea or participated in the plea discussions:

(1) **a guilty plea that was later withdrawn**;

(2) a nolo contendere plea;

(3) a statement made during a proceeding on either of those pleas under
Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the
prosecuting authority if the discussions did not result in a guilty plea or they
resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

**But a defendant can waive his Rule 410 protections**. *See United States v. Mezzanatto*, 513 U.S. 196, 197 (1995).   In *United States v. Jim*, 839 F.Supp.2d 1157 (D.N.M.2012)(Browning, J.), the Court, after allowing the defendant to withdraw his guilty plea, denied the defendant's motion to exclude statements he made in the plea agreement and during the plea colloquy, because the defendant waived his rights under Rule 410 when he entered the plea agreement.   *Jim*, 839 F. Supp. 2d at 1158.

The plea agreement in this case stated:

> Except under circumstances where the Court, acting on its own, rejects this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

Exhibit 1 at pg. 7.

Except under certain circumstances where the Court, acting on its own, fails to accept this plea agreement, the defendant waives his rights pursuant to Rule 410; *United States v. Washburn*, 728 F.3d 775, 780–82 (8th Cir.2013) (holding plea agreement, with its Rule 410 waiver, was binding on defendant once he signed the agreement and Rule 410 waiver remained enforceable, pursuant to its express terms, even though the defendant never entered a guilty plea required under that agreement and even though district court never accepted the plea agreement); *United States v. Quiroga*, 554 F.3d 1150, 11th 53–57 (8th Cir.2009) (enforcing plea agreement's

Rule 410 waiver that by its terms applied if the defendant breached the plea agreement, when the defendant breached the agreement by withdrawing his guilty plea).

Villalobos signed a contract with the government.   The fact that Villalobos violated the agreement by seeking to set aside his plea, does not mean the government is not entitled its benefit of the bargain.   Villalobos's Rule 410 waiver took effect when he signed the agreement, not when he entered his guilty plea.   *See Washburn*, 728 F.3d at 779–82 (8th Cir.).

It would make no sense to deny the efficacy of the Rule 410 waiver just because the defendant is trying to withdraw his guilty plea.   This would render the waiver largely meaningless.   The clearly contemplated situation, where the Rule 410 waiver would have any benefit to the government, is one in which defendant withdraws his guilty pleas and proceeds to trial.

The Supreme Court noted that admitting the plea statements for impeachment purposes enhanced the truth-seeking function of trials and would result in more accurate verdicts.   *See United States v. Mezzanatto*, 513 U.S. at 204 (Thomas, J.) ("The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts.").   In *United States v. Mitchell*, however, the Tenth Circuit extended the Supreme Court's reasoning in *United States v. Mezzanatto* to case-in-chief waivers.   The Tenth Circuit commented: "We see no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief waivers.   The same reasoning for the former compels the latter."   *United States v. Mitchell*, 633 F.3d at 1004.   It further explained its decision and stated: "Even if the district court determines a guilty plea should be withdrawn, a waiver of Rule 410 only means a trial will contain more evidence—both the evidence of the original guilty plea

and evidence the plea was withdrawn." *United States v. Mitchell*, 633 F.3d at 1005 (emphasis

added).  Before reaching the rule 410 question, the Tenth Circuit determined that the defendant's

guilty plea was knowing and voluntary.  *See United States v. Mitchell*, 633 F.3d at 1001.

     The defendant in *Jim* argued that he did not have all the evidence and pled guilty

involuntarily because his attorney at the time he pled guilty was missing half of the photographs

taken at the scene,.  *Jim*, at 1178.  This is analogous to Villalobos' claim that he did not have all

the information.  The Court analyzed the defendant's argument in terms of whether he

knowingly pled guilty; the Court noted that the defendant did not argue that the lack of evidence

affected his understanding of "what the plea connotes and of its consequence," the understanding

necessary to enter a knowing plea." *Jim*, at 1179 (quoting *Boykin v. Alabama*, 395 U.S. at 244).

The Court reviewed its reasons for previously allowing the defendant to withdraw his guilty plea,

including a defect in the plea colloquy in which the magistrate judge "never mentioned the word

'trial,' " and the defendant said he did not know he was waiving his right to proceed to trial and

that led the Court to find a "fair and just reason" to permit the defendant to withdraw his guilty

plea. 839 F.Supp.2d at 1180.  The Court concluded, however, that "the evidence in favor of a

knowing and voluntary plea outweighs considerably the evidence of an unknowing plea . . . ."

*Jim*, at 1181.  The Court determined that, because the waiver to which the defendant stipulated

permitted the United States to "use his statements in a subsequent 'criminal trial,' " the United

States could use the defendant's statements in any phase of the trial. *Jim*, at 1186.

     Thus, whether the plea was knowing and voluntary is the deciding factor in whether a

defendant's waiver of Rule 410 rights is enforceable.  The Court evaluates eight factors in

determining whether a defendant should be allowed to withdraw his or her guilty plea, but in

deciding whether a Rule 410 waiver is enforceable, it considers only one, or two in the conjunctive: whether the plea was knowing and voluntary.   Villalobos' argument is that his guilty plea was unknowing and voluntary and, thus, neither was his plea agreement which contained the Rule 410 waiver; therefore, the Rule 410 waiver is unenforceable.   As set forth in the preceding sections, Villalobos' plea was knowing and voluntary based on the plea colloquy so his Rule 410 waiver is knowing and voluntary and enforceable.   None of the other *Yazzie* factors is implicated.

Moreover, if Villalobos goes to trial and hopes to achieve an acquittal on Counts 3 and 4 of the indictment, he will undoubtedly need to take the witness stand and testify that he did not intend to carjack the vehicle, i.e., he will need to lie.   If Villalobos' testimony contradicts his prior sworn statements, and the United States is unable to offer competent evidence of those statements, then the Court and the United States will be forced to sit idly by while Villalobos brushes aside the truth-seeking mission of a trial.


## CONCLUSION

Based on the foregoing reasons, the United States requests that the Court find that none of the *Yazzie* factors weighs in favor of allowing the defendant to withdraw his guilty plea and thus he should not be allowed to withdraw his guilty plea.   Furthermore, the government requests that the Court determine that Villalobos' guilty plea was knowing and voluntary, that his waiver of rights pursuant to Rule 410 rights is valid and that, should the defendant be allowed to withdraw his guilty plea based on other *Yazzie* factors, the government should be allowed to present evidence of Villalobos' prior sworn statements in the government case-in-chief and for

impeachment purposes.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney


_____Filed Electronically_____
NORMAN CAIRNS
SAMUEL A. HURTADO
Assistant United States Attorneys
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing pleading was delivered

electronically to counsel of record.

_____Filed Electronically_____
NORMAN CAIRNS
Assistant United States Attorney