**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                No. 1:17-cr-00182-JCH

JUAN CARLOS VILLALOBOS-MACIAS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on Defendant Juan Carlos Villalobos-Macias's Motion to Withdraw Guilty Plea (Def.'s Mot., ECF No. 105). The Government has responded in opposition (Govt.'s Resp., ECF No. 107), to which the Defendant filed a reply brief (Def.'s Reply, ECF No. 111). The Court, having carefully reviewed the motion, briefs, and relevant law, concludes that the motion will be denied.

**I.**      **Background**

      **a. The Alleged Crimes**

      The Court has previously detailed the facts of this case in a previous Memorandum Opinion and Order (Order) denying Defendant's motion to dismiss Count 1 of the original indictment. *See United States v. Villalobos-Macias*, 280 F. Supp. 3d 1211 (D.N.M. 2017). On December 28, 2016, Defendant allegedly approached "P.J." while she and her husband were at a rest stop off southbound Interstate-25 outside of Pueblo, Colorado. *Id.* at 1213; Govt.'s Resp. at 2. Defendant pointed a revolver at P.J. as she sat in the passenger seat of her Toyota and then fired the weapon, shattering the car's window. *Villalobos-Macias*, 280 F. Supp. 3d at 1213. As P.J. fled, she threw

her purse near the back of the vehicle. *Id.* Defendant picked up the purse and drove P.J.'s vehicle out of the parking lot and south on Interstate-25. *Id.*

Later that day, and still driving P.J.'s vehicle, Defendant used the same revolver to unsuccessfully attempt a second carjacking of a Ford near Wagon Mound, New Mexico. *Id.* at 1213-14; Govt.'s Resp. at 2. Defendant fired rounds into the Ford and injured a different victim, "J.K.," in the hand. *Id.*; *Villalobos-Macias*, 280 F. Supp. 3d at 1214. Defendant then drove off, still in P.J.'s Toyota. *Id.* After a brief car chase on Interstate-25, New Mexico state police officers stopped and arrested Defendant. *Id.*

### b. The Original Indictment

In 2017, Defendant was charged in a (now superseded) four-count indictment with carjacking (Count 1), and attempted carjacking (Count 2), in violation of 18 U.S.C. § 2119, and with using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 3 and 4). *See* Indictment, ECF No. 2. Counts 1 and 3 centered on Defendant's criminal conduct that occurred in Pueblo County, Colorado, while Counts 2 and 4 alleged conduct that occurred in Mora County, New Mexico.

Count 1 of the original indictment charged Defendant with violating § 2119[1] as follows:

---

[1] The carjacking statute provides that:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both ….

18 U.S.C. § 2119 (footnote omitted).

> On or about December 28, 2016, in Pueblo County, in the District of Colorado, and elsewhere, the defendant, … with the intent to cause death and serious bodily harm, did take a motor vehicle, a white Toyota RAV4, bearing Colorado license plate number … from the person and presence of another, by force … resulting in serious bodily injury, a bullet wound to … [J.K's] hand that caused extreme physical pain ….

ECF No. 2 at 1.

### b. Defendant's Pre-Trial Venue Challenge

In May 2017, Defendant, through his federal public defender, moved under Federal Rule of Criminal Procedure 18 and the United States Constitution to dismiss the carjacking charge (Count 1) based on lack of venue. Defendant argued that "because the crime was begun and completed in the District of Colorado, not in the District of New Mexico," this district was the improper venue. ECF No. 16, 1. Defendant contended that the carjacking was not a continuing offense – that is, an offense that was "begun in one district and completed in another"— such that offense could be "prosecuted in any district in which [the] offense was begun, continued, or completed." *Id.* at 3 (quoting 18 U.S.C. § 3237(a)) (alteration in original). Rather, according to Defendant, the carjacking "began, continued, and w[as] completed" in the District of Colorado and therefore had to be prosecuted there. *Id.* (quoting *United States v. Cabrales*, 524 U.S. 1, 8 (1998)) (alteration in original).

Defendant additionally argued that even if the carjacking was a continuing offense, dismissal was still required because he "reached a point of temporary safety" in Colorado. *Id.* This was important, Defendant said, because the commission of a carjacking continues until the carjacker "has won his way to a place of temporary safety because escape is inherent to the crime of robbery." *Id.* at 6 (quoting *United States v. Figueroa-Cartagena*, 612 F.3d 69, 79 (1st Cir. 2010)). Because Defendant allegedly reached a point of temporary safety in Colorado after the carjacking, he argued that this supported his position that the carjacking began and ended there.

The Court denied the motion. It reasoned that the duration of the carjacking "continued so long as Defendant was still in flight." *Villalobos-Macias*, 280 F. Supp. 3d at 1218. The Court then explained that

> [w]hether and when such flight ended, either because Defendant reached a point of temporary safety or through some other intervening event, is a question of fact for the jury. *See United States v. Burton*, 121 Fed. Appx. 318, 323 (10th Cir. 2005) (unpublished) (stating that when escape ends is a "fact-based inquiry") (internal quotation marks and citation omitted)); *Samuels v. Hernandez*, No. CV 07-1456PSG(FMO), 2009 WL 2730502, at *13 (C.D. Cal. Aug. 25, 2009) (stating that the issue of whether a defendant has reached a place of temporary safety is a question of fact for the jury (citation omitted)).

*Id*.

The Court did, however, rule that parts of the indictment were facially inadequate to show that venue existed because the indictment did not "specify that the injury occurred in New Mexico." *Id*. at 1216. The Government was ordered to provide a bill of particulars setting forth the facts establishing venue in New Mexico, unless the Government obtained a superseding indictment which cured the venue deficiencies. The Government took the latter course. On December 20, 2017, the grand jury issued a superseding indictment accusing Defendant with a carjacking that occurred "in Pueblo County, in the District of Colorado, and in Mora County, in the District of New Mexico, and elsewhere." ECF No. 35. Defendant again pleaded not guilty.

### c. The Plea Agreement and Plea Colloquy

On March 1, 2019 – after several months of pretrial motions, including a motion for new counsel that his attorney later withdrew – Defendant entered into a plea agreement with the prosecution. *See* Plea Agreement, ECF No. 74. The written plea agreement was entered into under Federal Rule of Criminal Procedure 11(c)(1)(C), which permits a stipulated sentence, subject to court approval. The plea agreement called for Defendant to plead guilty to attempted carjacking (Count 2), and using, carrying, and discharging a firearm during and in relation to a crime of

violence, (Count 4) of the superseding indictment. *See* Plea Agreement ¶ 3. Count 2 carried a term of imprisonment of not more than 25 years. *See* 18 U.S.C § 2119(2). Count 4 carried a mandatory term of imprisonment of 10 years. *See* 18 U.S.C. § 924(c)(1)(A)(iii). Defendant admitted to committing these offenses and to being guilty of them. *See* Plea Agreement ¶¶ 10-14. The agreement proposed a stipulated sentence of 15 to 20 years in prison. *Id*. ¶ 15(a). As part of the agreement, the Government would dismiss the remaining two counts connected to Defendant's acts in Colorado. *Id*. ¶ 21(a). Defendant also waived his right to withdraw his guilty pleas under Federal Rule of Criminal Procedure 11(d), unless he could show a "fair and just reason." *Id*. ¶ 18.

The parties signed the agreement, which included the following "admission of facts" by the Defendant:

> On December 28th, 2016, on I-25 near Wagon Mound, New Mexico, after carjacking a vehicle in Colorado and driving into New Mexico, I attempted to carjack a second vehicle, … a beige Ford Edge[.] I approached the Ford Edge with the intent to use force, violence, and intimidation to take it. I used a silver revolver and fired shots into the Ford Edge, which struck the passenger door, passenger-side pillar, and rear hatch. The driver, J.K., was struck in the hand …. The bullet wound to J.K.'s hand caused extreme physical pain and impairment ….

> By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty.

*Id*. ¶¶ 12, 14.

A magistrate judge held a change-of-plea hearing. After Defendant was placed under oath, he was asked if he understood the rights he was giving up by entering pleas. The Court then had the Government describe the statutory charges and penalties against the Defendant. The Court recited the elements of the offenses to which Defendant pleaded to and asked him if he understood what the Government would be required to prove at trial to secure convictions. In response to the Court's inquires, Defendant stated that he understood the attempted carjacking and firearm charges and their maximum penalties; that he and his attorney had enough time to discuss every part of the

agreement and that his attorney answered all of his questions about the agreement; that he and his attorney discussed what the Government would have to prove at trial and what defenses Defendant had; that he was satisfied with the advice and representation of his attorney; and that the factual bases for his pleas were accurate. *See generally* Plea Hr'g. Tr., ECF No. 107-2, 5:17-20; 6:1-25 – 7:1-18; 11:3-18; 12:5 – 13:10; 13:18-20; 13:25 – 14:1; 14:12:25 – 15:3. Based on his inquiries, the judge found that Defendant knowingly and voluntarily entered his pleas and conditionally accepted them subject to the district judge's ultimate acceptance or rejection of the plea agreement. *Id*. 16:13-21.

### d. Defendant's Presentencing Report

Defendant was scheduled to be sentenced on August 13, 2019. Before the hearing, the United States Probation and Pretrial Services office issued a Presentencing Investigation Report (PSR). Defendant's basic offense level to was calculated to be 20. *See* PSR ¶ 23, ECF No. 76. His total offense level was 21. *Id*. ¶ 23. His guideline imprisonment range calculated at offense level 21 and criminal history category I was 37-46 months for Count 2, the attempted carjacking. *Id*. ¶ 64. As for Count 4, discharging a firearm, it carried a guideline sentence of 10 years which would run consecutively to any sentence imposed. *Id*. ¶¶ 63-64. Therefore, his total guideline range was 157 to 166 months. *Id*. ¶ 64.

The PSR explained that if Defendant went to trial and was convicted on Counts 2 and 4, his statutory penalties would be not more than 25 years for Count 2 and not more than 10 years for Count 4, that latter of which would be imposed consecutively. *Id*. ¶ 66. If convicted of those counts,

his offense level would have been 24. An offense level of 24 combined with a criminal history category of I was calculated to be in the range of 171 months to 183 months. *Id.*[2]

### e. Defendant's Motion to Withdraw his Plea Agreement

At the sentencing hearing, Defendant informed the Court of his displeasure with his attorney's representation, so the hearing was continued. *See* Clerk's Minutes, ECF No. 83. Six days later, Defendant's attorney moved to withdraw his representation on behalf of Defendant. The Court granted the request and appointed new counsel. *See* ECF Nos. 84, 88, 103. Defendant's sentencing hearing was reset for June 25, 2020.

On May 20, 2020, about 14-months after Defendant pleaded guilty, he moved to withdraw his plea agreement. First, Defendant claims that he has asserted a legally cognizable defense to venue, his plea was invalid, and his prior attorney's assistance was ineffective. He claims that his prior attorney did not inform him of the Court's ruling on his motion to dismiss "that the venue issue was a jury question." Def.'s Mot. at 2, 3. All he knew was "that the Court had denied his motion." *Id.* at 2. Defendant's attorney "confirmed with prior counsel that [prior counsel]" did not tell Defendant that venue was a question of fact. *Id.* Moreover, in pre-plea discussions, Defendant was "intimidated and coerced" into accepting the agreement because his prior attorney told him that he would face "a s---load of time," if he went to trial. *Id.* When he said that he wanted to go to trial, prior counsel "would ask … [him] to state what … his defenses were," although counsel allegedly did not inform him about his venue defense. *Id.* Feeling pressured by his attorney's statements, Defendant says that he agreed to plead guilty, even though "there [was] a legal question

---

[2] The PSR also explained that if Defendant had gone to trial on all counts (Counts 1-4) of the superseding indictment, then "he would have been subject to not more than 15 years as to Count 1. As to Count 2, not more than 25 years; Count 3-4 not more than 10 years which requires a statutory minimum of 10 years is to be served consecutive to any term of imprisonment imposed." PSR ¶ 65.

as to whether," the prosecution's trial evidence "was sufficient to establish attempted carjacking." *Id.* He claims that a jury could have concluded from his evidence that he shot at J.K.'s car "because he thought [J.K. and her husband] were following him." *Id.* at 6.

Second, he states that his prior attorney did not negotiate a more favorable plea agreement under First Step Act standards. The First Step Act "reduced the mandatory minimum sentence for first-time offenders who commit multiple § 924(c) counts charged in the same indictment." *United States v. Hodge*, 948 F.3d 160, 161 (3d Cir. 2020) (citing First Step Act of 2018, § 403, Pub. L. No. 115-391, 132 Stat. 5194, 5221-22)).[3] Had Defendant been convicted of all four counts, he says that the Act would have "changed the original mandatory minimum from 35 years to 20 years." Def.'s Mot. at 2. Had he known that the jury could have determined the facts establishing venue, "he would not have accepted a plea agreement" and its stipulated sentence of 15-20 years. Def.'s Mot. at 2-3. Referring to post-First Step Act guideline calculations, Defendant explains that

> [i]f convicted, the mandatory minimum of 20 years, is the top range in the plea agreement. But, if acquitted of Counts I & III, the Defendant would be facing a 10 year mandatory minimum, and a guideline range of 37-63 months depending on whether he received acceptance of responsibility. In short, the Defendant did not enter into the plea knowingly, because he did not know that he had a defense that impacted possible penalties ….

*Id.* at 3.

In a brief that included a transcript of the change-of-plea hearing and a copy of Defendant's plea agreement, the Government opposed the motion. It argues that, *inter alia*, in light of Defendant's sworn plea allocution and plea agreement, his motion to withdraw does not meet the standards for the granting of such motions, which the Court describes below.

## II.    Standard of Review

---

[3] The PSR does not indicate that Defendant has prior § 924(c) convictions.

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal." To determine if the defendant has carried this burden, the district court considers seven factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005); *accord United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). The Tenth Circuit has also "suggested an additional factor to consider: the likelihood of conviction." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir. 2014) (citations omitted). "If the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against the defendant, a district court need not consider the remaining four factors." *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016) (citing *United States v. Byrum,* 567 F.3d 1255, 1265 (10th Cir. 2009)). That is because those remaining factors "speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal." *Sanchez-Leon*, 764 F.3d at 1258 (internal quotation marks and citation omitted) (alteration and emphasis in original). "The burden is on the defendant to establish a fair and just reason for the withdrawal of the plea." *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000) (citations and internal quotation marks omitted).

"A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). "[T]he defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing." *Id.* (citation omitted). "No hearing need be granted

when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." *Id*. (citations omitted); *United States v. Carter*, 109 F. App'x 296, 299 (10th Cir. 2004) (same); *see also United States v. Mascheroni*, No. 10-CR-2626-1 WJ, 2014 WL 11430943, at *2 (D.N.M. Aug. 13, 2014) (no need to hold an evidentiary hearing on defendant's motion to withdraw guilty plea where "a well-developed record" showed that the defendant's motion was "inconsistent with statements he made during the plea colloquy.") [4]

## III.    Discussion

The Court analyzes whether Defendant: (a) asserted his innocence, (b) knowingly and voluntarily pleaded guilty, and (c) received ineffective assistance of counsel.

### a. Assertion of Innocence

"A defendant's assertion of innocence must be 'credible.'" *Marceleno*, 819 F.3d at 1273 (quoting *Hamilton,* 510 F.3d at 1214). "[A]lthough the assertion of legal innocence may satisfy this factor in some instances, the mere assertion of a legal defense is insufficient[.]" *Hamilton*, 510 F.3d at 1214. "A defendant 'must support the assertion of innocence with a credible argument,' meaning he 'must make a factual argument that supports a legally cognizable defense.'" *Marceleno*, 819 F.3d at 1273 (quoting *Hamilton,* 510 F.3d at 1214, 1215 n. 2). "[A] credible assertion of innocence has the quality or power of inspiring belief, and tends to either defeat the elements in the government's prima facie case or make out a successful affirmative defense." *Id*. at 1275 (citation and internal quotation marks omitted). To prevail on this factor, a defendant is

---

[4] Defendant did not request an evidentiary hearing on his motion under D.N.M.LR-Cr. 47.10. And because the Defendant has not raised "significant questions concerning the voluntariness or general validity of the plea," the Court did not *sua sponte* hold an evidentiary hearing. *Gonzalez*, 970 F.2d at 1100.

"not required to provide conclusive proof" of his innocence. *Id.* However, a movant must present some "concrete evidence" supporting his assertion of innocence. *Id.* at 1274 (citing *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009)). Defendant argues that he "has a clear defense to the venue issue as to Counts I & III, and a clear and obvious defense to the intent element of the attempted carjacking in Counts II & IV." Def.'s Mot at 8.

### i. Venue

Even though Defendant claims that his prior attorney did not adequately inform him about his potential venue defense, the record shows that the issue was "the subject of a pre-trial motion rejected by the [Court] in a published opinion," which indicates that Defendant had notice of the matter. *United States v. Calderon*, 243 F.3d 587, 589 (2d Cir. 2001). Therefore, Defendant's motion challenging venue sufficiently shows that he "had the requisite factual and legal knowledge to assert his innocence" to where the violation occurred before pleading guilty. *Garcia*, 577 F.3d at 1274.

In addition, he affirmatively acknowledged at the change-of-plea hearing that he discussed with his attorney "what defenses [he] may have" after the Court explained the consequences of pleading guilty. Plea Hr'g. Tr. 13:19. Although Defendant now avers otherwise about his understanding of his potential venue defense, his statements at his plea hearing carry a "strong presumption of verity" that he has failed to overcome. *Sanchez-Leon*, 764 F.3d at 1259 ("solemn declarations made in open court carry a strong presumption of verity.") (quoting *Tovar Mendoza v. Hatch,* 620 F.3d 1261, 1269 (10th Cir. 2010)); *United States v. Bambulas,* 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth"); *United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997) (statements that "contradict what [the defendant] said at his plea allocation are not sufficient

grounds to withdraw the guilty plea.") Defendant's venue arguments thus fail because the record shows that he litigated the venue defense in a pretrial motion and swore under oath that he understood his potential defenses.

### ii. Intent

Defendant identifies two pieces of evidence which he believes could establish a legal defense that he lacked the requisite intent to commit attempted carjacking. First, in a post-arrest interview, he told a psychologist that he shot J.K.'s car because it was "following him." Def.'s Mot. at 6. Second, he says a New Mexico state police report describing the roadside encounter with J.K. supports his version of events. He claims that "[t]here is little to no [direct] evidence [ ]" that he intended to attempt to take the vehicle from J.K. with the intent to seriously injure or kill J.K. to steal the car. *Id.*

But, much the same as his venue defense, this evidence shows that before pleading guilty Defendant had the factual and legal knowledge to assert his innocence. *See Garcia*, 577 F.3d at 1274. Defendant's evidence also lacks the "quality or power of inspiring belief … to either defeat the elements in the government's prima facie case or make out a successful affirmative defense." *Marceleno*, 819 F.3d at 1275. To find Defendant guilty of federal carjacking under 18 U.S.C. § 2119 a jury must find that Defendant "[1] [took] a motor vehicle [2] that has been transported, shipped, or received in interstate or foreign commerce [3] from the person or presence of another [4] by force and violence or by intimidation [5] with the intent to cause death or serious bodily harm." *United States v. Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000). "To be convicted of an 'attempt' of a federal offense, a defendant must: (1) have the specific intent to engage in the criminal conduct [he] is charged with attempting; and (2) have taken a substantial step toward the commission of the offense that strongly corroborates [his] criminal intent." *Ovalles v. United*

*States*, 905 F.3d 1300, 1305 (11th Cir. 2018), *abrogated on other grounds by Brown v. United States*, 942 F.3d 1069, 1070 (11th Cir. 2019).

Looking at the plea allocution transcript and plea agreement, Defendant's suggested evidence would not defeat the intent element of the Government's prima facie case because he admitted that he intended to take the car. For example, in his plea agreement Defendant acknowledged that he "attempted to carjack a second vehicle … with the intent to use force, violence, and intimidation to take it," by firing gunshots that struck J.K., and "admit[ted] that there [was] a factual basis for each element of the crime(s) to which" he pleaded guilty. Plea Agreement ¶¶ 12, 14. And at the change-of-plea hearing, he stated under oath that he was guilty of attempted carjacking and discharging a firearm. *See* Plea Hr'g. Tr. 14:3-11. Nor could Defendant establish a successful affirmative defense. Firing gunshots at a driver is not allowed because one believes he is being followed.

Defendant has therefore failed to prove that he has credibly asserted his innocence based on his intent. *See Siedlik*, 231 F.3d at 749 (defendant failed assertion-of-innocence factor where "he specifically stated that he was guilty … of his crimes both in the plea agreement and at the change-of-plea hearing."); *Byrum*, 567 F.3d at 1264 (defendant's letter to district court stating that he was innocent and wanted to withdraw his guilty plea was not credible where it contradicted his earlier guilty plea during allocution statements); *United States v. Khan*, No. CR 12-2901 RB, 2015 WL 13662873, at *3 (D.N.M. July 6, 2015) (defendant's motion to withdraw failed to present a credible claim of legal innocence where he admitted his criminal conduct in his plea agreement.) Moreover, the Court also notes that Defendant did not submit a sworn statement describing his factual innocence or rendition of events, which weighs against him in the assertion-of-innocence analysis. *Garcia*, 577 F.3d at 1274 (felon-in-possession of a firearm movant failed assertion-of-

innocence factor where he "did not provide the district court with a sworn statement or a specific description of" evidence of his innocence.) In summary, the assertion-of-innocence factor weighs against Defendant.

### b. Knowing and Voluntary Plea

"[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011) (quoting *United States v. Gigot,* 147 F.3d 1193, 1198 (10th Cir. 1998)) (alterations in original). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Sanchez-Leon*, 764 F.3d at 1259. "To enter a plea that is knowing and voluntary, the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" *Marceleno*, 819 F.3d at 1276 (quoting *United States v. Hurlich,* 293 F.3d 1223, 1230 (10th Cir. 2002)).

Defendant claims that his plea was invalid because he gave it unknowingly and involuntarily. He says it was made unknowingly because the First Step Act altered his potential sentence and his prior attorney did not explain that he had a credible defense to the attempted carjacking charge. He says that his plea was involuntarily because his counsel exerted pressure on him to plea when he wanted to go to trial.

### i. Knowingly

As relevant here, the First Step Act "reduced the mandatory minimum sentence for first-time offenders who commit multiple § 924(c) counts charged in the same indictment." *Hodge*, 948 F.3d at 161. More specifically, the Act

> eliminated § 924(c)(1)(C)'s "stacking" requirement for first-time offenders. Under
> either version of § 924(c), a first-time offender convicted of discharging a firearm

faces a 120-month mandatory minimum on his first § 924(c) count. *See* § 924(c)(1)(A)(iii). But before the First Step Act, if that offender was convicted of a second § 924(c) count, he faced an enhanced consecutive 300-month mandatory recidivist penalty—even though both counts came from the same indictment …. After the First Step Act, when a first-time offender who discharged a firearm is convicted of multiple § 924(c) counts from the same indictment, each count carries only the standard 120-month minimum, run consecutively.

*Id*. at 161 & n.2.

Section 403(a) of the First Step Act, which amended § 924(c)(1)(C), applies "to any offense that was committed before [December 21, 2018], if a sentence for the offense has not been imposed as of such date of enactment." *United States v. Meehan*, 798 F. App'x 739, 740 (3d Cir. 2020) (quoting Pub. L. No. 115-391, § 403(b)). The Act was the law at the time the parties entered the plea agreement. Defendant says that the Act, as applied to his "two convictions under 924(c) … is a 10 + 10, as the 25 year enhanced penalty does not apply." Def.'s Reply at 3. The Court understands Defendant's argument to be that under the Act, the starting point for negotiations would have been 20 years on the 924(c) counts, rather than 35 years, and therefore his prior attorney did not negotiate a more favorable plea agreement.

"While incorrect information regarding maximum mandatory sentences violates Rule 11, [ ] the failure does not necessarily render a defendant's plea void." *Khan*, 2015 WL 13662873, at *4 (citing *Gigot*, 147 F.3d at 1197). "A variance from the requirements of [Rule 11] must be reviewed for harmless error." *Id*. (quoting Fed. R. Crim. P. 11(h)). "To establish that a Rule 11 error was non-harmless, a defendant must show a reasonable probability that, but for the error, he would not have entered the plea." *Id*. (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)); *see also United States v. Herndon*, 7 F.3d 55, 58 (5th Cir. 1993) (where a defendant has been incorrectly informed of a mandatory minimum, the relevant "question is whether

awareness of a mandatory minimum would have affected the defendant's decision to plead guilty.")

Defendant's claim that if he had been informed of the correct, lower range of punishment – namely, that two § 924(c) convictions "is a 10 + 10, as the 25 year enhanced penalty does not apply" – is an incomplete statement that ignores the superseding indictment as a whole. The carjacking and attempted carjacking counts carried maximum imprisonment terms of 15 and 25 years, respectively, while the two § 924(c) counts each carried 10-year minimum terms, run consecutively. Count 2 alone exposed Defendant to a 25-year maximum term because of the enhanced penalty for conduct resulting in seriously bodily injury. *See* 18 U.S.C. § 2119(2). Given Defendant's potential sentencing exposure, a rational defendant would have accepted a stipulated sentence of 15-20 years, even if allegedly misadvised about a reduced mandatory minimum sentence for first-time § 924(c) offenses under the First Step Act. Defendant therefore has not shown that the correct information regarding two § 924(c) convictions would have changed his decision to plead guilty.[5]

### ii. Voluntarily

Defendant claims that his guilty pleas were involuntary because his prior lawyer exerted pressure on him. The record shows otherwise. At the change-of-plea hearing, the Court asked him if anyone "threaten[ed] or pressur[ed] him into pleading guilty" to which he responded under oath,

---

[5] For Defendant's guilty pleas to Counts 2 and 4, Probation calculated a sentencing guideline range of 157 to 166 months (about 13 years) that was ultimately lower than the stipulated sentence of 15-20 years. But Defendant does not appear to argue that his pleas were unknowing based on his prior attorney's sentencing prediction. In any event, such a claim would likely fail. *See United States v. Williams*, 919 F.2d 1451, 1457 (10th Cir. 1990) (attorney's mistaken estimate as to guideline sentence was not a basis for withdrawing guilty plea where the defendant was aware of the maximum sentence he faced, understood that the judge made the ultimate sentencing determination, and the imposed sentence was reasonably close to the maximum sentence anticipated by the plea agreement.)

"No." Plea Hr'g. Tr. At 5:14-16. His prior attorney's statement that Defendant faced a "s---load of time" does not amount to coercion. *See United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) (defendant's claim that he was "hounded, browbeaten and yelled at," called "stupid" and profane names by defense counsel was not enough to make a guilty plea involuntary.) Defendant also claims that his prior attorney exerted pressure by asking him to state his defenses without informing him of his potential defenses. However, Defendant swore at the plea allocution that he and his prior attorney "discussed … what defenses [Defendant] may have" and he said that he was satisfied with his attorney's advice and representation. Plea Hr'g. Tr. 13:18-19. Again, these are the sort of statements that "carry a strong presumption of verity" that Defendant has failed to overcome. *Sanchez-Leon*, 764 F.3d at 1259. Defendant has therefore has not shown that he was under undue pressure by his prior attorney to plead guilty. The knowing-and-voluntary factor weighs against Defendant.

### c. Ineffective Assistance of Counsel

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky,* 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)). To determine whether a defendant's plea is invalid because of his attorney's ineffective performance in connection with the plea, courts apply the two-part standard established in *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Hamilton,* 510 F.3d at 1216. Under this standard, the defendant "must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced his defense." *Hamilton,* 510 F.3d at 1216 (citation and quotation marks omitted). To satisfy the first prong, a defendant "must show that the attorney's performance fell outside the wide range of competence demanded of attorneys in criminal cases." *Id.* (quotation marks omitted). The second prong, prejudice, requires a showing "that there is a

reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* (quotation marks omitted). The court may "consider the performance and prejudice prongs in either order; and if Defendant fails to meet his burden on one prong, [the court] need not consider the other." *United States v. Gilchrist*, 685 F. App'x 638, 642 (10th Cir. 2017) (citing *Strickland*, 466 U.S. at 697).

### i. Prejudice

Considering the agreed factual basis in the plea agreement and the plea allocution, Defendant has not shown a reasonable probability that but for counsel's alleged errors, the results of the plea proceeding would have been different. As explained above, the record reflects that before pleading guilty Defendant had the factual and legal information to assert potential defenses. Even if Defendant's prior attorney did not plea bargain against post-First Step Act standards, Defendant was told the maximum penalties and he understood that the plea offer of 15-20 years was less than his overall potential sentencing exposure on Counts 2 and 4. Accordingly, Defendant has not shown prejudice based on his prior attorney's alleged errors.

## IV.   Conclusion

Because the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors weigh against Defendant, the Court does not analyze the remaining *Yazzie* factors. *See Marceleno*, 819 F.3d at 1272. For the reasons explained above, Defendant has failed to show a "fair and just reason" for withdrawing his guilty pleas to Counts 2 and 4 under Fed. R. Crim. P. 11(d)(2)(B).

**IT IS THEREFORE ORDERED that** Defendant Juan Carlos Villalobos-Macias's

Motion to Withdraw Guilty Plea **(ECF No. 105)** is **DENIED**.

**IT IS SO ORDERED**.

_____

HONORABLE JUDITH C. HERRERA
Senior United States District Judge